IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| MISSION BAY SKI & BIKE, INC., | § | Case No.: 07-20870 |
| | § | |
| Debtor. | § | Hon. A. Benjamin Goldgar |

**INTERIM ORDER AND NOTICE OF HEARING ON THE
MOTION OF MISSION BAY SKI & BIKE, INC.
FOR ENTRY OF INTERIM AND FINAL ORDERS WHICH
AUTHORIZE THE DEBTOR TO OBTAIN
SECURED FINANCING UNDER 11 U.S.C. §364(C)(3)** ~~AND
USE, ON A LIMITED BASIS, THE ALLEGED CASH
COLLATERAL OF THE PRESENT HOLDERS OF THE
ALLEGED SECURED CLAIM OF FIRST AMERICAN BANK~~  aka

This matter was heard on the motion (the "Motion") filed by MISSION BAY SKI & BIKE, INC., debtor and debtor-in-possession, for entry of an order authorizing it to obtain secured financing from Linda Post, and provide adequate protection to, and, on a limited basis, use the cash collateral of the present holders of the alleged secured claim of First American Bank ("FAB"), namely, William W. Linnemann and Valerie J. Gervais (the "Defendants"), and the court, being advised in the premises:

**IT IS ORDERED:**

1. The Motion is set for final hearing on Wednesday, March 19, 2008 at 10:00 a.m. at 219 S. Dearborn Street, Courtroom 613, Chicago, IL 60604. Any party who seeks to object to the Motion must do so in writing which is filed with the Court on or before 5:00 p.m. on March 18, 2008.

2. The Debtor is ordered to serve a copy of this Interim Order on its 20 largest creditors and any person entitled to receive notice of proceedings in this case, which service shall be by first class US mail to be sent on or prior to 5:00 p.m. on March 3, 2008.

-1-

3. Pending the final hearing on the Motion, the Debtor and Linda Post are authorized to execute the Revolving Credit Agreement (the "Agreement"), a copy of which is attached hereto as Exhibit 1, and the Revolving Note which is referenced by that Agreement, and pending the final hearing on the Motion, Linda Post is authorized to extend secured financing to the Debtor in an amount not greater than $35,000.00 (which the Court finds is necessary to avoid immediate and irreparable harm to the Debtor's business and estate) pursuant to the terms of the Agreement; and the Debtor shall only use those Advances to pay those operating expenses which are described in the column of the Budget which is attached to the Agreement for the period of February 25, 2008 through March 20, 2008.

4. Pursuant to the Agreement, the Advances will be secured by liens granted to Mrs. Post by the Debtor on all of the Debtor's assets (other than avoiding power claims under 11 U.S.C. §§542, 543, 544, 547, 548, 549, 550 and 553) which liens will be granted pursuant to 11 U.S.C. §364(c)(3), which liens shall be junior to the pre-petition liens granted to First American Bank ("FAB") pursuant to the Loan agreements, and the replacement liens which were granted to FAB through the Cash Collateral Order entered by the Court in this case on December 14, 2007 as document 53, and shall be subordinate to the rights of the United States Trustee to payment of quarterly fees, which liens shall be fully effective and deemed perfected upon the entry of the interim order concerning this Motion (subject to modification by the Court at the final hearing on the Motion).

Dated: **2 8 FEB 2008**

ENTER:

United States Bankruptcy Judge

## REVOLVING CREDIT AGREEMENT

This Revolving Credit Agreement (the "Agreement") is made and entered into by and between the undersigned borrower (the "Debtor") and the undersigned lender (the "Lender") as of the date set forth on the last page of this Agreement.

### ARTICLE I. LOANS

1.  **Revolving Credit Loans.** From time to time prior to February 28, 2009 (the "Maturity Date") or the earlier termination hereof, the Debtor may borrow from the Lender for working capital purposes up to the aggregate principal amount outstanding at any one time of Fifty Thousand Dollars ($50,000.00)(the "Loan Amount"). All revolving loans hereunder will be evidenced by a single promissory note of the Debtor payable to the order of the Lender in the principal amount of the Loan Amount (the "Revolving Note"), in the form attached hereto as Exhibit A. Although the Revolving Note will be expressed to be payable in the full Loan Amount, the Debtor will be obligated to pay only the amounts actually disbursed hereunder, together with accrued interest on the outstanding balance at the rates and on the dates specified therein and such other charges provided for herein.

2.  **DIP Order.** The loans made hereunder shall be made pursuant to the terms and conditions of the interim and final orders (the "Orders") entered by the US Bankruptcy Court in the chapter 11 case 07-20870 (the "Case") initiated by the Debtor in the US Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "Court"), pursuant to the Debtor's Motion For Entry Of Interim And Final Orders Which Authorize The Debtor To Obtain Secured Financing Under 11 U.S.C. section 363(C)(3) and Use, On A Limited Basis, The Alleged Cash Collateral Of The Present Holders Of The Alleged Secured Claim Of First American Bank (the "Motion") which Motion was presented on February 27, 2007. In the event of any inconsistency between the terms of the Orders and the terms of this Agreement, the terms of the Order shall govern.

3.  **Advances, Liens and Procedures.** The Lender is authorized and directed to make advances ("Advances" to the Debtor by any commercially reasonable means. Such advances shall be made on the following terms and conditions:

    a.  The Debtor shall use Advances exclusively as needed to pay the Debtor's operating expenses described in the budget (the "Budget") which is attached to this document as Exhibit B;

    b.  Pending the final hearing on this Motion, Lender may make Advances to the Debtor no greater than $35,000.00, and those Advances shall be used by the Debtor only to the extent needed to pay categories of operating expenses set forth in the Budget which are no greater than 110% of the amounts stated in each line item of the attached budget for the period of February 25, 2008 through March 20, 2008, which are needed to avoid immediate and irreparable harm to the Debtor's business;

c. Following the commencement of the final hearing on the Motion, and subject to the terms of any additional interim or final order which the Court may enter with respect to the Motion, the Debtor may use Advances to pay its operating expenses in amounts which are no greater than 110% of the amounts stated in each line item of the attached Budget, on a cumulative basis between February 25, 2008 and September 30, 2008; provided, however, that any advances which the Lender may agree to make to the Debtor between October 1, 2008 and February 28, 2009 shall not exceed, in any calendar month, 110% of the amounts stated in each line item of the attached Budget for the Month of September 2008;

d. Following the commencement of the final hearing on the Motion, the Advances will be periodically repaid from cash collateral (other than the CD) as available funds permit, and shall become due on the earlier to occur of the conversion of this case to chapter 7, the appointment of a trustee for the debtor or any other change in control of the ownership or management of the Debtor, the termination of the Debtor's business, or the occurrence of February 28, 2009.

e. The Advances will bear interest at 6.5% per annum, based on daily loan balances;

f. To secure the Advances, the Debtor hereby grants to Lender liens on all of the Debtor's assets (other than avoiding power claims under 11 U.S.C. §§542, 543, 544, 547, 548, 549, 550 and 553) granted pursuant to 11 U.S.C. §364(c)(3), which liens shall be junior to the pre-petition liens granted to FAB pursuant to the Loan agreements, and the replacement liens which were granted to FAB through the Cash Collateral Order, and subordinate to the rights of the United States Trustee to payment of quarterly fees, which liens shall be fully effective and deemed perfected upon the entry of the interim order concerning this Motion (subject to modification by the Court at the final hearing on the Motion);

g. The Debtor shall segregate any cash collateral which it has on hand as of the close of business on Sunday, February 24, 2008, and, after deducting and paying from such cash any administrative claim which may be allowed to G&L Sunset Properties, shall promptly deposit the balance in an interest-bearing ~~30-day certificate of deposit~~ account at a financial institution eligible to hold estate funds under US Trustee regulations (the "~~CD~~ account");

h. the Debtor shall refrain from the further use of cash collateral pending the entry of an interim or final order of this Court, at the hearing on notice to parties in interest sent pursuant to Federal Rule of Bankruptcy Procedure 4001, at which time, if allowed by the Court, the Debtor may use cash collateral to repay Advances or to pay those expenses described in the attached budget, or other administrative claims which may be allowed by the Court, provided, however, that notwithstanding any other provision hereof, the Debtor shall *not* use any of the funds in the ~~CD~~ account until such time that the Court enters an order which disallows or subordinates the allowed secured claims of William Linnemann and Valerie Gervais (the "Defendants") against the Debtor, or enters such other order after notice and a hearing which authorizes the use by the Debtor of the cash collateral in the ~~CD~~ account;

i.  Pending the outcome of adversary case 08-adv-55 which the Debtor has commenced against the Defendants, the Defendants shall retain their liens and alleged secured claim under the FAB Loan and the Cash Collateral Order, but the Debtor's other obligations under the Cash Collateral Order, including its obligation to pay adequate protection to First American Bank, shall immediately terminate;

j.  If the Court enters an order and judgment in the Adversary which disallows or subordinates the alleged secured claims asserted by the Defendants, then the liens granted to Lender to secure the DIP Loan shall revert to first priority status, subject only to the claims which may be asserted by the United States Trustee for payment of fees due to the United States under 11 U.S.C. §1930 or otherwise;

k.  If the Court allows a claim to the Defendants under 11 U.S.C. §507(b), Lender will make an Advance to the Debtor to enable the Debtor to pay such claim, up to the maximum availability under the DIP Loan; and

l.  Neither the dismissal nor the conversion of this case to a case under another chapter of the Bankruptcy Code shall affect the liens and other adequate protection granted herein to Lender and to the Defendants.

4.  **Conditions to Borrowing.** The Lender will not be obligated to make (or continue to make) advances hereunder unless (i) the Lender has received executed originals of the Revolving Note and this Agreement (which documents shall sometimes be collectively and individually referred to herein as the "Loan Documents"); (ii) the Court has entered the Interim Order, and, after the hearing on notice to parties in interest in the Case, either another Interim Order or a Final Order which grants the Motion; and (iii) no condition described in paragraph 1.4 (d) of this Agreement has occurred. Notwithstanding any other provision hereof, the Lender shall not be obligated to make Advances if the Court does not enter either an additional Interim Order or a Final Order after the term of the Initial Order expires.

5.  **Other Remedies.** Nothing in this Article III is intended to restrict the Lender's rights under any of the Loan Documents or at law, and the Lender may exercise all such rights and remedies as and when they are available.

6.  **Delay; Cumulative Remedies.** No delay on the part of the Lender in exercising any right, power or privilege hereunder or under any of the other Loan Documents will operate as a waiver thereof, nor will any single or partial exercise of any right, power or privilege hereunder preclude other or further exercise thereof or the exercise of any other right, power or privilege. The rights and remedies herein specified are cumulative and are not exclusive of any rights or remedies which the Lender would otherwise have.

7.  **Relationship to Other Documents.** The warranties, covenants and other obligations of the Debtor (and the rights and remedies of the Lender) that are outlined in this Agreement and the other Loan Documents are intended to supplement each other. In the event of any inconsistencies in any of the terms in the Loan Documents, all terms will be cumulative so

as to give the Lender the most favorable rights set forth in the conflicting documents, except that if there is a direct conflict between any preprinted terms and specifically negotiated terms (whether included in an addendum or otherwise), the specifically negotiated terms will control.

**8.     Successors.** The rights, options, powers and remedies granted in this Agreement and the other Loan Documents will extend to the Lender and to its successors and assigns, will be binding upon the Debtor and their successors and assigns and will be applicable hereto and to all renewals and/or extensions hereof.

**9.     Payments.** Payments due under the Revolving Note and other Loan Documents will be made in lawful money of the United States, and the Lender is authorized to charge payments due under the Loan Documents against any account of the Debtor. All payments may be applied by the Lender to principal, interest and other amounts due under the Loan Documents in any order which the Lender elects.

**10.    Defaults.** Upon the occurance of any of the following acts or events, Lender's obligation to make Advances hereunder shall at her sole option cease: (a) the failure of the Debtor to make a required payment on the Loan; (b) the conversion or dismissal of the Case or the appointment of a trustee (or an examiner with trustee powers) in the Case; (c) any change in the current ownership interests in the Debtor, or in the identity of the principal managers of the Debtor, including Aaron Post; or (d) the termination of the Debtor's business.

**11.    Applicable Law and Jurisdiction; Interpretation; Joint Liability; Severability.** This Agreement and all other Loan Documents will be governed by and interpreted in accordance with the internal laws of the State of Illinois (without regard to conflict of law principles), except to the extent superseded by Federal law. Invalidity of any provisions of this Agreement will not affect any other provision. THE DEBTOR HEREBY CONSENTS TO THE EXCLUSIVE JURISDICTION OF ANY STATE OR FEDERAL COURT SITUATED IN COOK COUNTY, ILLINOIS AND WAIVE ANY OBJECTION BASED ON FORUM NON CONVENIENS, WITH REGARD TO ANY ACTIONS, CLAIMS, DISPUTES OR PROCEEDINGS RELATING TO THIS AGREEMENT, THE REVOLVING NOTE, THE COLLATERAL, ANY OTHER LOAN DOCUMENT OR ANY TRANSACTIONS ARISING THEREFROM, OR ENFORCEMENT AND/OR INTERPRETATION OF ANY OF THE FOREGOING. Nothing herein will affect the Lender's rights to serve process in any manner permitted by law, or limit the Lender's right to bring proceedings against the Debtor in the competent courts of any other jurisdiction or jurisdictions. This Agreement, the other Loan Documents and any amendments hereto (regardless of when executed) will be deemed effective and accepted only upon the Lender's receipt of the executed originals thereof. If there is more than one Debtor, the liability of the Debtor will be joint and several, and the reference to "Debtor" will be deemed to refer to all Debtor. Invalidity of any provision of this Agreement shall not affect the validity of any other provision.

**12.    Perfection.** Although the liens granted hereby shall be deemed to be perfected by the entry of the Orders, the Debtor shall sign any additional documentation which the Lender reasonably believes is necessary in order to maintain, create or perfect the liens granted hereby and in the Orders.

**13.    Copies; Entire Agreement; Modification.** The Debtor hereby acknowledge the receipt of a copy of this Agreement and all other Loan Documents.

IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. THE TERMS OF THIS AGREEMENT MAY ONLY BE CHANGED BY ANOTHER WRITTEN AGREEMENT. THIS NOTICE SHALL ALSO BE EFFECTIVE WITH RESPECT TO ALL OTHER CREDIT AGREEMENTS NOW IN EFFECT BETWEEN Debtor AND THE LENDER. A MODIFICATION OF ANY OTHER CREDIT AGREEMENTS NOW IN EFFECT BETWEEN Debtor AND THE LENDER, WHICH OCCURS AFTER RECEIPT BY Debtor OF THIS NOTICE, MAY BE MADE ONLY BY ANOTHER WRITTEN INSTRUMENT. ORAL OR IMPLIED MODIFICATIONS OF SUCH CREDIT AGREEMENTS ARE NOT ENFORCEABLE AND SHOULD NOT BE RELIED UPON.

IN WITNESS WHEREOF, the undersigned have executed this REVOLVING CREDIT AGREEMENT as of February 28, 2008

Mission Bay Ski & Bike, Inc., Debtor In Possession

By: _____
      Authorized Agent

213 S. Arlington Heights Road
Arlington Heights, IL 60007


_____
Linda Post
2150 Common Ridings Way
Inverness, IL 60010

# REVOLVING CREDIT NOTE

$50,000.00                                                                    February 28, 2008

      FOR VALUE RECEIVED, the undersigned borrower (the "Borrower"), promises to pay to the order of Linda Post, of Inverness, IL ("the "Lender "), the principal sum of Fifty Thousand and NO/100 Dollars ($50,000.00), payable on February 28, 2010.

**Interest.**

      The unpaid principal balance will bear interest at an annual rate equal to six and one half percent per annum (6.5%), non-compounded.

**Payment Schedule.**

      Interest is payable upon the terms set forth in the Revolving Credit Agreement dated as of the date hereof between the Borrower and the Lender, to which Agreement reference is hereby made for a statement of the terms and conditions under which loans evidenced hereby were or may be made and a description of the terms and conditions upon which the maturity of this Note may be accelerated, and for a description of the collateral securing this Note.

      Principal amounts remaining unpaid after the maturity thereof, whether at fixed maturity or by reason of acceleration of maturity, shall bear interest from and after maturity until paid at a rate of 5 % per annum plus the rate otherwise payable hereunder.

      In no event will the interest rate hereunder exceed that permitted by applicable law. If any interest or other charge is finally determined by a court of competent jurisdiction to exceed the maximum amount permitted by law, the interest or charge shall be reduced to the maximum permitted by law, and the Lender may credit any excess amount previously collected against the balance due or refund the amount to the Borrowers.

```
                                            Exhibit A to Revolving Credit
                                            Agreement dated Feb. 28, 2008
```

Without affecting the liability of any Borrower, endorser, surety or guarantor, the Lender may, without notice, renew or extend the time for payment, accept partial payments, release or

IN WITNESS WHEREOF, the undersigned have executed this REVOLVING CREDIT AGREEMENT as of February 28, 2008

Borrower:

Mission Bay Ski & Bike, Inc., Debtor In Possession

By: _____
Troy Crady, President

213 S. Arlington Heights Road
Arlington Heights, IL 60007


_____
Linda Post
2150 Common Ridings Way
Inverness, IL 60010

Budget - Mission Bay Ski & Bike

Exhibit B to Motion for DIP Financing

| | 2/27-3/20 | 3/20-3/31 | April | May | June | July | August | September | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| Income | $30,000 | $20,000 | $100,000 | $100,000 | $120,000 | $100,000 | $60,000 | $40,000 | $570,000 |
| | | | | | | | | | |
| Expenses: | | | | | | | | | |
| Advertising | $500 | $500 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $7,000 |
| Cost of Goods | $25,000 | $25,000 | $50,000 | $50,000 | $60,000 | $50,000 | $30,000 | $20,000 | $310,000 |
| Credit Card Fees | $600 | $400 | $2,000 | $2,000 | $2,400 | $2,000 | $1,200 | $800 | $11,400 |
| Insurance | | $750 | $750 | $750 | $750 | $750 | $750 | $750 | $5,250 |
| Licenses & Permits | | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $1,400 |
| Maintenance & Repairs | $0 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $3,500 |
| Miscellaneous/Petty Cash | $250 | $500 | $750 | $750 | $750 | $750 | $750 | $750 | $5,250 |
| Office & Store Supplies | $0 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $1,750 |
| Payroll - Wages | $3,000 | $1,000 | $5,000 | $5,000 | $5,000 | $4,000 | $4,000 | $4,000 | $31,000 |
| Payroll - Officers | $3,500 | $1,500 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $35,000 |
| Payroll Taxes | $650 | $250 | $1,000 | $1,000 | $1,000 | $900 | $900 | $900 | $6,600 |
| Postage & Delivery | $25 | $25 | $50 | $50 | $50 | $50 | $50 | $50 | $350 |
| Rent | | | $6,200 | $6,200 | $6,200 | $6,200 | $6,200 | $6,200 | $37,200 |
| Shipping | $75 | $25 | $100 | $100 | $100 | $100 | $100 | $100 | $700 |
| Telephone & internet | $500 | | $500 | $500 | $500 | $500 | $500 | $500 | $3,500 |
| Utilities | $1,000 | | $500 | $500 | $500 | $500 | $500 | $500 | $4,000 |
| Sub Total | $35,100 | $30,900 | $73,800 | $73,800 | $84,200 | $72,700 | $51,900 | $41,500 | $463,900 |
| Other Pay-outs Not Expensed: | | | | | | | | | |
| IL Sales Tax | $2,100 | $1,400 | $7,000 | $7,000 | $8,400 | $7,000 | $4,200 | $2,800 | $39,900 |
| | | | | | | | | | |
| Net Income/Loss | -7200.00 | -12300.00 | 19200.00 | 19200.00 | 27400.00 | 20300.00 | 3900.00 | -4300.00 | |
| Cash Balance | -$7,200 | -$19,500 | -$300 | $18,900 | $46,300 | $66,600 | $70,500 | $66,200 | |